AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of North Carolina

FILED
MAR 1 4 2022
PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

| | |
|---|---|
| United States of America <br> v. <br> Dylan Crabtree <br> *Defendant(s)* | Case No. 7:22-mj-1050-RN |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __January 27, 2022__ in the county of __Brunswick__ in the __Eastern__ District of __North Carolina__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Distribution a Quantity of Methamphetamine. |

This criminal complaint is based on these facts:

Please see attached affidavit.

☑ Continued on the attached sheet.

*Complainant's signature*

Stacey-Leigh Van Der Westhuizen, ATF Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 over the telephone.

Date: __March 14, 2022__

*Judge's signature*

City and state: __Raleigh, NC__

Robert T. Numbers II, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Stacey Van Der Westhuizen, a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), being duly sworn, hereby depose and state as follows:

1. I am a Special Agent with the ATF and have been so employed since 2014. Currently, I am assigned to the Charlotte Field Division. As an ATF Agent, I have attended training at the Federal Law Enforcement Training Center in Brunswick, Georgia. I have been trained in conducting investigations into violations of the Federal firearms laws, the Controlled Substances Act, and other violations of Federal law, including gang, and violence-related offenses. As a result of my assignments, I have received specialized training in the field of firearms and drug investigations.

2. This affidavit is submitted in support of a Criminal Complaint and arrest warrant for Dylan Lee CRABTREE, for the offenses of distributing a quantity of methamphetamine in violation of Title 21, United States Code, Section 841(a)(1).

3. The facts in this affidavit are based on first-hand knowledge, my training and experience, information learned during this investigation from other agents, and information learned from local law enforcement officers. I am familiar with the facts and circumstances of the investigation through my personal participation, from discussion with other agents within the ATF and other law enforcement agencies, and from my review of records and reports relating to the investigation. This affidavit is intended to show that there is sufficient probable cause for the arrest of CRABTREE and does not set forth all of the facts within this investigation.

4. The described event occurred in Brunswick County, which is located in the Eastern District of North Carolina. Based on the foregoing facts, I submit that there is probable cause to believe that Dylan Lee CRABTREE has committed the offense of distributing a quantity of

methamphetamine in violation of Title 21, United States Code, Section 841(a).

## PROBABLE CAUSE

5. On Thursday, January 27, 2022, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) Confidential Informant (CI) 2147 met with ATF Special Agents (SA) and Task Force Officers (TFO) at a secured, ATF undercover location. CI 2147 stated that he/she talked with CRABTREE and arranged for CRABTREE to travel to the secured, ATF undercover location to sell SA Strickland and TFO Moon two (2) ounces (approximately 56.699 grams) of marijuana for $300.00.

6. At approximately 3:20 pm, CRABTREE arrived at the ATF undercover location driving a 4-door white Ford Fusion (unknown license plate) with what appeared to be damage to the left side rear bumper and trunk. CRABTREE exited the driver's side of the Ford Fusion and met with CI 2147 at the hood of the vehicle. CRABTREE opened the hood of the Ford Fusion and retrieved a clear vacuum sealed bag containing marijuana to CI 2147. CRABTREE, CI 2147, and Eleena Kiera HARVEY (DOB: 09/15/1993) entered the secured, ATF undercover location. CRABTREE introduced himself to SA Strickland and TFO Moon as "Dylan" and introduced the female with him as his girlfriend "Kiera." CRABTREE asked if he could use the restroom and walked into the bathroom. HARVEY began walking around the ATF undercover location looking at the counterfeit merchandise.

7. CI 2147 approached the countertop/bar area and brought the clear vacuum sealed bag containing a green leafy substance believed to be marijuana with the words "Wedding Cookies" handwritten on the bag that CRABTREE had given him/her. CI 2147 put the suspected marijuana on the countertop/bar area in front of TFO Moon and SA Strickland. CI 2147 asked for $300.00 in Agent Cashier Funds with which to purchase the marijuana. TFO Moon counted out

$300.00 in Agent Cashier Funds and gave the money to CI 2147 who gave the funds to CRABTREE. SA Strickland put the clear vacuum sealed bag of marijuana on non-certified digital scales which produced a field weight of 68 grams weighed in the bag.

8. CRABTREE exited the bathroom and CI 2147 began showing CRABTREE around the ATF undercover location and showing them the counterfeit merchandise. CI 2147 and SA Strickland began to talk low amongst themselves in which CRABTREE stated, "you can talk out loud." CRABTREE told SA Strickland that he will do "$200.00 for a ball." SA Strickland then asked CRABTREE if he has it with him in which "CRABTREE stated "sure." HARVEY told TFO Moon that she is an assistant manager at Starbucks.

9. CRABTREE, HARVEY, SA Strickland, TFO Moon, and CI 2147 then approached the countertop/bar area. CRABTREE pulled out a clear plastic bag tied off in a knot containing a rock-type substance believed to be methamphetamine from the left pocket of his jeans. CRABTREE opened the clear bag and pulled out a rock and put it on the non-certified digital scales. TFO Moon asked HARVEY if the marijuana is any good in which she stated that she has not tried that and that she does not really smoke like that. CRABTREE weighed out a quantity of suspected methamphetamine on the non-certified digital scales and SA Strickland asked CRABTREE how much. CRABTREE stated $200.00 in which SA Strickland counted out $200.00 in Agent Cashier Funds and gave the money to CRABTREE.

10. SA Strickland told CRABTREE if we put this stuff out and it is good how much can we get in which CRABTREE stated, "as much as you want." SA Strickland asked CRABTREE for his phone number and stated that his name is "Smiley." CRABTREE originally provided SA Strickland with the phone number (919) 583-2158 then stated 85 in which SA Strickland confirmed 583-2185 with CRABTREE.

11. CRABTREE asked SA Strickland what kind of prices that he is looking for and how much weight. SA Strickland and CRABTREE began to discuss quantity and prices of methamphetamine. SA Strickland talked about pounds of methamphetamine in which CRABTREE stated, "I have never dealt with no weight like that, but I know I can get it." CRABTREE stated that he can get "shrooms" (psilocybin mushroom) also. CRABTREE then stated, "I definitely have the plug on the other." CRABTREE stated that he would like to look around more at the counterfeit merchandise.

12. CRABTREE took off his red long sleeve shirt off and put a counterfeit jersey on. TFO Moon asked CRABTREE about the tattoos on his body and where he got them in which CRABTREE responded, "prison." CRABTREE asked what we wanted for the counterfeit jersey in which SA Strickland told him don't worry about it just do us right. CRABTREE then stated "shit y'all don't want no more than do you" and stated that he will do another ball for $150.00. CRABTREE walked back over to the countertop/bar area with SA Strickland and TFO Moon and pulled out the same clear plastic bag tied off in a knot containing a rock-type substance believed to be methamphetamine from his pants pocket. CRABTREE opened the clear bag and began to put a rock on the non-certified digital scales and stated that it was approximately five (5) grams. SA Strickland stated that he would give him $200.00 for that. CRABTREE goes to put the rest of the suspect methamphetamine back into his pocket in which TFO Moon asked him how much he had left. CRABTREE put the clear plastic bag with what was left of the suspected methamphetamine on the non-certified digital scales. SA Strickland then put the suspected methamphetamine that Crabtree had just stated that he wanted $200.00 for with the clear plastic bag with what was left of the suspected methamphetamine on the non-certified digital scales. The non-certified digital scales produced a field weight of 19 grams with the bag. CRABTREE stated

that he would take $700.00 for it. SA Strickland counted out $700.00 in Agent Cashier Funds and gave the money to CRABTREE for the suspected methamphetamine.

13. CRABTREE pulled out a vacuum sealed bag with a clear plastic inside out it with what appeared to be marijuana from his pants pocket. CRABTREE then stated, "you might as well get this too then" and placed the bag on the countertop. CRABTREE then asked for a knife in which TFO Moon pulls a folding knife from his pocket and gave it to CRABTREE to open the vacuum sealed bag. CRABTREE opened the vacuum sealed bag and took out a clear plastic bag tied in a knot with what appeared to be marijuana inside. CRABTREE placed this bag of suspected marijuana on the non-certified digital scales. CRABTREE then stated to TFO Moon $100.00. TFO Moon counted out $100.00 in Agent Cashier Funds and gave the money to CRABTREE for the suspected marijuana. CRABTREE said to TFO Moon and SA Strickland that the suspected marijuana is the "same thing" and that it is "wedding cookies."

14. At approximately 3:48 pm, CRABTREE and HARVEY exited the ATF undercover location.

15. During a debrief, CI 2147 stated to TFO Moon that CRABTREE retrieved the marijuana from under the hood of the Ford Fusion when CRABTREE first arrived at the ATF undercover location. CI 2147 stated that CRABTREE gave the marijuana to CI 2147 in the parking lot before they came inside the ATF undercover location. CI 2147 stated that the Ford Fusion that CRABTREE arrived in is the same Ford Fusion that he has seen CRABTREE operating in the past.

16. The suspected methamphetamine was field tested by SA Strickland in which it gave a positive indicator for methamphetamine.

## CONCLUSION

17. Based on the foregoing representations made herein, I submit that there is probable cause to support the charge that Dylan Lee Crabtree did knowingly distribute a quantity of methamphetamine in violation of Title 21 United States Code Section 841(a)(1).

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Stacey Leigh Van Der Westhuizen
Agent, A.T.F.


Pursuant to Rule 4.1 of the Federal Rules of Criminal Procedure, the affiant appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this written affidavit.
Dated: March 14, 2022

Robert T. Numbers, II
United States Magistrate Judge